## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **JARED BATTERMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.** |
| | ) | |
| **BR CARROLL GLENRIDGE, LLC,** | ) | |
| **IQ DATA INTERNATIONAL, INC.,** | ) | |
| **EQUIFAX INFORMATION** | ) | |
| **SERVICES LLC, and TRANS** | ) | |
| **UNION LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF JARED BATTERMAN'S COMPLAINT

Comes now JARED BATTERMAN, Plaintiff, through counsel, and files his Complaint for transgressions of consumer protection statutes by all defendants, and breach of contract and tort by Defendant BR Carroll Glenridge, LLC, showing this Court the following:

1. This Court has jurisdiction over this matter pursuant to the Fair Credit Reporting Act, 15 U.S.C. Section 1681(p), the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §1692 et seq., and ancillary jurisdiction. Venue lies in the Northern District of Georgia as Plaintiff's claims arose from acts of Defendants perpetrated therein.

## PRELIMINARY STATEMENT

2. Plaintiff brings this action for damages based upon Defendants' violations of the FCRA, FDCPA, Georgia Statutory Rights, Breach of Contract, and Negligence.

3. Plaintiff is a natural person.

4. Plaintiff is a "consumer" as defined by consumer protection statutes cited herein.

5. BR Carroll Glenridge, LLC (hereinafter "BR Carroll" or "Landlord") is a foreign limited liability company and may be served c/o Corporation Service Company at 40 Technology Pkwy. South # 300, Norcross, GA 30092.

6. I.Q. Data International, Inc. (hereinafter "IQ Data") is a foreign profit corporation in business as a debt collector, the primary purpose of which is to collect debt on behalf of property owners from their current and former tenants, and may be served c/o Corporation Service Company at 40 Technology Pkwy. South # 300, Norcross, GA 30092.

7. Trans Union and Equifax are consumer reporting agencies (hereinafter "CRAs"), as defined in section 1681(f) of the FCRA, regularly engaged in the business of assembling, evaluating, and dispersing information

concerning consumers for the purpose of furnishing consumer reports, as defined in section 1681a(d) of the FCRA, to third parties.

### *FACTUAL ALLEGATIONS*

8.  Plaintiff's creditworthiness has been repeatedly compromised by the acts and omissions of Defendants.

9.  From September 7, 2017 to January 20, 2018, Plaintiff rented an apartment from BR Carroll. A copy of the subject lease is attached hereto as Exhibit "1" and referred to herein as the "subject lease".

10. The Lease states, in part, as follows:

    This lease shall end if the premises are destroyed or otherwise rendered uninhabitable due to an Act of God or any other catastrophic event or casualty that was not the responsibility of Resident or Resident's occupants, family, social guests, or invitees.

    Lease Section 11. Ex. 1.

11. The Lease also states "Management will make repairs to the apartment with reasonable promptness upon receipt of written notice from Resident."

    Lease Section 23. Ex. 1.

12. In September of 2017, Plaintiff determined there was a leak in his apartment, rented to him by Defendant BR Carroll that needed to be repaired.

13. Promptly, and on numerous occasions, Plaintiff notified Defendant BR Carroll that there was a leak in his apartment, and that there was a moisture issue that needed correction.

14. Thus, shortly after Plaintiff and Defendant Landlord executed the subject lease, the leased premises were rendered uninhabitable due to flooding.

15. The flooding of the leased premises was not the responsibility of Plaintiff or his occupants, family, social guests, or invitees.

16. Plaintiff promptly notified Defendant Landlord when the apartment became uninhabitable, and requested repairs.

17. Due to BR Carroll's failure to repair the leak and the resulting flooding of his apartment with water, Plaintiff suffered $8,203.28 in replacement costs for his damaged property.

18. Due to BR Carroll's failure to repair the leak or remediate the flooding, the apartment continued to be uninhabitable. See lab results of samples taken from the subject apartment showing elevated counts of harmful molds in the apartment's storage closet and living room attached hereto as Exhibit "2".

19. Because BR Carroll failed to make requested repairs in breach of the parties' lease, Plaintiff terminated the lease by letter dated January 20,

2018, and by email on January 21, 2018. A copy of Plaintiff's letter terminating his lease with BR Carroll is attached hereto as Exhibit "3".

20. BR Carroll acknowledged the termination of the lease, but claimed—with no legal or factual justification—that Plaintiff owed an additional $2,816 as "liquidated damages."

21. In an attempt to coerce Plaintiff into paying this spurious claim, BR Carroll hired Defendant IQ Data.

22. IQ Data then began aggressively harassing Plaintiff in an attempt to collect the purported consumer debt stemming from BR Carroll's claimed liquidated damages.

23. On February 5, 2018, Plaintiff, through counsel, sent a letter notifying IQ Data, and reiterating to BR Carroll, that the purported debt does note exist. See February 5, 2018 Dispute letter attached hereto as Exhibit "4".

24. Despite being on notice that Plaintiff owes the Landlord no purported debt, Defendants BR Carroll and IQ Data continued to represent that the debt is owed, and continued collection attempts against Plaintiff.

25. From about April 7, 2018, BR Carroll and IQ Data started and continued to report false, derogatory information to credit reporting agencies ("CRAs") including Equifax and Trans Union, stating Plaintiff was

delinquent on an Account (hereinafter the "BR Carroll and IQ Data Representations").

26. On April 15, 2018, Plaintiff sent dispute letters to Defendants Equifax and Trans Union explaining that the BR Carroll and IQ Data Representations are false and requesting that they investigate the same. A copy of Plaintiff's April 15 Dispute letter to Equifax is attached hereto as Exhibit "5"; A copy of Plaintiff's April 15 Dispute letter to Trans Union is attached hereto as Exhibit "6".

27. On information and belief, Equifax and Trans Union forwarded these disputes to IQ Data and BR Carroll.

28. All Defendants failed to conduct an adequate investigation of Plaintiff's dispute, which is clearly indicated by the fact that all Defendants continue to report that Plaintiff owes the purported liquidated damages.

29. IQ Data and BR Carroll continue to make the false representations to Plaintiff and to Defendants Equifax and Trans Union that Plaintiff owes BR Carroll liquidated damages.

30. Equifax and Tran Union continue to report to others that Plaintiff owes BR Carroll liquidated damages.

31.  Plaintiff recently sought a new car lease, but his leasing agent showed him what his rate would be due to his credit score, which is low because BR Carroll and IQ Data continue to incorrectly report his status to credit reporting agencies. Based on Plaintiff's credit score, he cannot afford a car lease.

32.  Plaintiff applied for a line of credit and was approved for a very small credit limit, despite having a stellar credit history prior to Defendants' false reporting, and steady, good employment.

33.  If not for Defendants' false reporting, and failure to adequately investigate Plaintiff's disputes of the purported BR Carroll liquidated damages account, then Plaintiff would have far more credit available to him.

34.  On November 27, 2018, Plaintiff again sent dispute letters to Defendants Equifax, Trans Union, and IQ Data explaining that the BR Carroll and IQ Data Representations are false and requesting that they investigate the same, and cease reporting incorrect information about Plaintiff.

35.  On information and belief, Equifax and Trans Union forwarded these disputes to BR Carroll and IQ Data.

36.  Defendants continue to report that Plaintiff owes BR Carroll the purported liquidated damages.

37. All Defendants failed to conduct an adequate investigation of Plaintiff's dispute, which is clearly indicated by the fact that all Defendants continue to report that Plaintiff owes the purported liquidated damages.

38. IQ Data and BR Carroll continue to make the false representations to Plaintiff and to Defendants Equifax and Trans Union that Plaintiff owes BR Carroll liquidated damages.

39. Equifax and Tran Union continue to report to others that Plaintiff owes BR Carroll liquidated damages.

40. Defendants' continuous false reporting and attempts to collect debt from Plaintiff have caused him considerable distress.

41. Presently, Plaintiff has an employer who conducts thorough background checks, and Defendants' false reporting is slowing completion of Plaintiff's employer's background checks, limiting his career options and otherwise negatively impacting Plaintiff.

**FIRST CLAIM FOR RELIEF AGAINST EQUIFAX AND TRANS UNION: VIOLATION OF THE FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. § 1681e(b)**

42. Plaintiff re-alleges and incorporates paragraphs 7 through 41 above as if fully set out herein.

43. Equifax and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files they publish and maintain concerning Plaintiff.

44. As a result of this conduct, action and inaction of Equifax and Trans Union, Plaintiff suffers and has suffered damage by loss of and limited credit, loss of the ability to purchase and benefit from credit, and the mental and emotional pain and anguish and the humiliation and embarrassment of credit denials.

45. Equifax and Trans Union's conduct, action and inaction was willful, rendering them each liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

46. In the alternative, Equifax and Trans Union's conduct was negligent, entitling Plaintiff to recover under 15 U.S.C. 1681o.

47. Plaintiff is entitled to recover costs and attorney's fees from Equifax and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## SECOND CLAIM FOR RELIEF AGAINST EQUIFAX AND TRANS: VIOLATION OF THE FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. § 1681i

**48.** Plaintiff re-alleges and incorporates paragraphs 7 through 41 above as if fully set out herein.

**49.** Equifax and Trans Union violated 15 U.S.C. § 1681i on multiple occasions by failing to delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies.

**50.** Equifax and Trans Union violated 15 U.S.C. § 1681i on multiple occasions by failing to conduct lawful reinvestigations.

**51.** Equifax and Trans Union violated 15 U.S.C. § 1681i on multiple occasions by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

**52.** Equifax and Trans Union violated 15 U.S.C. § 1681i on multiple occasions by relying upon verification from sources it has reason to know are unreliable, namely BR Carroll and IQ Data.

**53.** As a result of this conduct, action and inaction of Equifax and Trans Union, Plaintiff suffered damage by loss of and limited credit; loss of the ability to purchase and benefit from credit; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

54. Equifax and Trans Union's conduct, action and inaction was willful, rendering them each liable for actual or statutory damages, and punitive damages in amounts to be determined pursuant to 15 U.S.C. § 1681n.

55. In the alternative, Equifax and Trans Union's conduct was negligent entitling Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

56. Plaintiff is entitled to recover costs and attorney's fees from Equifax and Trans Union in amounts to be determined pursuant to 15 U.S.C. § 1681n and/or 1681o.

**FIRST CLAIM FOR RELIEF AGAINST BR CARROLL AND IQ DATA: VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681s-2(b)**

57. Plaintiff re-alleges and incorporates paragraphs 8 through 41 above as if fully set out herein.

58. At no time did either BR Carroll or IQ Data have a reasonable or good faith belief that any balance reported to any credit reporting agency was owed by Plaintiff.

59. On February 5, 2018 Plaintiff contested the purported debt to BR Carroll and IQ Data. Ex. 4.

60. On April 17, 2018, Plaintiff disputed the report of the purported debt by all Defendants to both Equifax and Trans Union.

**61.** Equifax and Trans Union then forwarded on these disputes to BR Carroll and IQ Data and otherwise notified BR Carroll and IQ Data of Plaintiff's disputes.

**62.** On November 27, 2018, Plaintiff again sent dispute letters to Defendants Equifax, Trans Union, and IQ Data explaining that the BR Carroll and IQ Data Representations are false and requesting that they investigate the same, and cease reporting incorrect information about Plaintiff.

**63.** Equifax and Trans Union then forwarded on these disputes to BR Carroll and IQ Data and otherwise notified BR Carroll and IQ Data of Plaintiff's disputes.

**64.** BR Carroll and IQ Data received notice from Equifax and Trans Union after each dispute made to Equifax and Trans Union.

**65.** On all occasions that Plaintiff disputed BR Carroll and IQ Data's furnished credit information, BR Carroll and IQ Data disputed, without justification, that BR Carroll and IQ Data's furnished credit information was improperly reported.

**66.** All Defendants failed to conduct an adequate investigation of Plaintiff's dispute, which is clearly indicated by the fact that all Defendants continue to report that Plaintiff owes the purported liquidated damages.

67. BR Carroll and IQ Data re-verified the BR Carroll and IQ Data Representations to Equifax and Trans Union repeatedly. Equifax and Trans Union then merely parroted the information back to third parties through their credit reporting database.

68. BR Carroll and IQ Data violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) by continuing the BR Carroll and IQ Data Representations within Plaintiff's credit file with Equifax and Trans Union without also including a notation that this debt was disputed.

69. BR Carroll and IQ Data violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes of the BR Carroll and IQ Data Representations.

70. BR Carroll and IQ Data violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) by failing to review all relevant information regarding same; by failing to accurately respond to Equifax.

71. BR Carroll and IQ Data violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) by failing to accurately respond to Trans Union.

72. BR Carroll and IQ Data violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) by failing to permanently and lawfully correct their own

internal records to prevent the re-reporting of the BR Carroll and IQ Data Representations to the consumer reporting agencies.

73.  As a result of this conduct, action and inaction of BR Carroll and IQ Data, Plaintiff suffered damage by loss of and limited credit; loss of the ability to purchase and benefit from credit; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and worry that his career will be negatively impacted.

74.  BR Carroll and IQ Data's conduct, action and inaction was willful, rendering each liable for actual, statutory, and punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n.  In the alternative, BR Carroll and IQ Data were each negligent entitling Plaintiff to recover actual damages under 15 U.S.C. 1681o.

75.  Plaintiff is entitled to recover costs and attorney's fees from BR Carroll and IQ Data in amounts to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**SECOND CLAIM FOR RELIEF AGAINST IQ DATA: VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA), 15 U.S.C. § 1692,** *et seq.*

76.  Plaintiff re-alleges and incorporates paragraphs 4, 8 through 41, and 56 through 74 of this Complaint as if fully set forth herein.

77. Defendant IQ Data is a "debt collector" under 15 U.S.C. § 1692a because IQ Data regularly collects or attempts to collect debts owed or due or asserted to be owed or due another. IQ Data also is a "debt collector" because it uses one or more instrumentalities of interstate commerce or the mail in a business the principal purpose of which is the collection of debts.

78. Defendant IQ Data acted intentionally in representing that Plaintiff owes money on a consumer debt stemming from a lease for residence, which Plaintiff does not owe. In Numerous correspondence to Defendant IQ Data has misrepresented the character, amount, and legal status of the alleged debt in violation of 15 U.S.C. § 1692e(2). For instance, on February 22, 2018, IQ Data sent correspondence to Plaintiff, claiming that Plaintiff owes $3,391.36 in principal and $21.46 in interest, which amounts were not owed.

79. Defendant IQ Data has communicated false credit information in violation of 15 U.S.C. § 1692e(8). Starting around From about April 7, 2018, BR Carroll and IQ Data started and continued to report false, derogatory information to CRAs including Equifax and Trans Union, stating Plaintiff was delinquent on an Account. Further, after Plaintiff's numerous disputes

of said debt, Defendant IQ Data failed to communicate that the disputed debt is disputed.

80. Defendant IQ Data violated the FDCPA, 15 U.S.C. § 1692f(1) by attempting to collect interest in the amount of $21.46 by letter dated February 22, 2018, which interest was not owed.

81. Plaintiff has suffered damages because of Defendants' continuous violations of the FDCPA and Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k in an amount to be proven at trial. For instance, Plaintiff has expended attorney's fees in order to defend himself against Defendant IQ Data's collection efforts.

82. Plaintiff is entitled to statutory penalties in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692k.

83. Plaintiff is entitled to the recovery of reasonable costs and attorney's fees pursuant to 15 U.S.C. § 1692k.

## SECOND CLAIM FOR RELIEF AGAINST BR CARROLL: BREACH OF CONTRACT

84. Plaintiff re-alleges and incorporates paragraphs 9 through 19 of this Complaint as if fully set forth herein.

85. By contract entered between Plaintiff and BR Carroll on September 6, 2017, "Management will make repairs to the apartment with reasonable promptness upon receipt of written notice from Resident." Ex. 1, Section 23.

86. On or about September 14, 2017, it became apparent to Plaintiff that repairs to the apartment were necessary when the apartment was flooded with water.

87. Promptly, Plaintiff requested repair of the apartment pursuant to the lease.

88. In addition to the manner of notice required in the lease, Plaintiff provided notice electronically, which was responded to by Defendant BR Carroll, creating a mutual departure of strict notice requirements under the lease.

89. BR Carroll failed to repair the apartment in response to Plaintiff's reasonably prompt request.

90. BR Carroll thus breached the lease, damaging Plaintiff by depriving him of the reasonably habitable accommodations for which he had bargained.

91. The parties' lease states that "[i]n Civil action... for breach of this lease, the prevailing party shall be entitled to attorney's fees in the amount of fifteen percent (15%) of the principal and interest owing and all expenses of litigation, including, but not limited to, court costs..." Lease ¶ 21. Ex.

1. Therefore, Plaintiff is entitled to 15% on top of all recovered damages in this action plus all expenses of this litigation, including his attorney's fees, and court costs.

## THIRD CLAIM FOR RELIEF AGAINST BR CARROLL: NEGLIGENCE

92. Plaintiff re-alleges and incorporates paragraphs 9 through 19 and 85 through 90 of this Complaint as if fully set forth herein.

93. O.C.G.A. § 51-1-9 provides, "[p]rivate duties may arise from statute or from relations created by contract, express or implied. The violation of a private duty, accompanied by damage, shall give a right of action."

94. O.C.G.A. § 44-7-13 places an affirmative duty on a landlord, such that, "[t]he landlord must keep the premises in repair."

95. Pursuant to O.C.G.A. §§ 44-7-2(b)(1) and 44-7-13, BR Carroll was statutorily required to properly repair and maintain the subject premises in a safe and habitable condition.

96. BR Carroll undertook an implied warranty of habitability to Plaintiff when it rented him his apartment.

97. Pursuant to O.C.G.A. § 44-7-14, BR Carroll was responsible for damages arising from defective construction or for damages arising from the failure to keep the premises in repair.

98. BR Carroll had an affirmative duty to repair the subject premises against flooding.

99. BR Carroll had an affirmative duty to maintain the subject premises in a safe and habitable condition for Plaintiff's use and enjoyment.

100. BR Carroll breached its duty of care by failing to repair a leaking wall, allowing water intrusion into the subject premises, failing to repair wet, moldy carpet, carpet pad, walls, and premises, and failing to repair and remediate the rampant water and mold growth within the subject premises that resulted. See O.C.G.A. § 44-7-14 ("[t]he landlord is responsible for damages arising from defective construction or for damages arising from the failure to keep the premises in repair.").

101. Through failing to properly maintain and repair the subject premises, BR Carroll breached statutory duties owed to Plaintiff pursuant to O.C.G.A. §§ 44-7-2(b)(1) and 44-7-13 and local building codes; BR Carroll was negligent per se.

102. The negligent acts of BR Carroll were the direct and proximate cause of damages and expenses incurred by Plaintiff.

103. Each of the foregoing acts and omissions constitute an independent count of negligence on the part of BR Carroll and one or more or all above-stated

acts was the proximate cause of Plaintiff's loss of personal property, loss of a habitable apartment, personal suffering, and other harm.

104. But for the negligence of BR Carroll, Plaintiff would not have suffered damages, including loss of personal property.

105. As a direct and proximate result of Defendant BR Carroll negligence, Plaintiff has suffered damage and loss of personal property with a total replacement value of at least $8,203.28.

106. Mr. Batterman has lost the value of his apartment in the amount of approximately $5,000.00 for either partial or total loss of the use of his apartment during the lease-term.

107. Plaintiff has also suffered emotional distress, as a result of Defendant BR Carroll' actions and inaction.

108. Plaintiff sent an ante litem letter to Defendant BR Carroll on October 10, 2016 in a good faith effort to resolve his claims.

109. Defendant BR Carroll failed to respond to Plaintiff's good faith effort to settle his claim with an offer in any amount.

110. Due to Defendant BR Carroll's bad faith actions, causing Plaintiff to incur unnecessary trouble and expense, Plaintiff is entitled to recover from

Defendant BR Carroll attorney's fees and costs of litigation in an amount to be determined at trial.

111. Defendant BR Carroll knew of the defects in the subject property, but willfully ignored them, concealed them from Plaintiff, and failed to warn Plaintiff about the scope of the defects, to save money on repairs. Thus, the actions and inactions of Defendant BR Carroll demonstrate willful misconduct, failure to warn, collusion, fraudulent concealment, malice, fraud, fraudulent inducement, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences, for which Plaintiff seeks punitive damages pursuant to O.C.G.A. § 51-12-5.1.

## FOURTH CLAIM FOR RELIEF AGAINST BR CARROLL: FAILURE TO RETURN SECURITY DEPOSIT

112. After Plaintiff vacated the subject premises, Defendant BR Carroll did not provide Plaintiff with a comprehensive list of damages to the subject premises subject to charge against the security deposit, as was required by O.C.G.A. § 44-7-33(b).

113. Defendant BR Carroll failed to return to Plaintiff his $75.00 security deposit.

114. Pursuant to O.C.G.A. § 44-7-35(b), Defendant BR Carroll's failure to provide to Plaintiff a comprehensive list of damages to the subject premises subject to charge against the security deposits worked a forfeiture of all his rights to withhold any portion of the security deposit or to bring an action against Plaintiff for damages to the premises.

115. Pursuant to O.C.G.A. § 44-7-35 (c), Defendant BR Carroll is liable to Plaintiff in the amount of three times the sum improperly withheld—being $225.00—plus reasonable attorney's fees.

## FIFTH CLAIM AGAINST BR CARROLL: VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT ("FBPA"), O.C.G.A. § 10-1-390, *et seq.*

116. Plaintiff re-alleges and incorporates paragraphs 9 through 19, 85 through 90, and 92-114 of this Complaint as if fully set forth herein.

117. BR Carroll's actions in managing and leasing real property took place in the conduct of consumer acts or practices as outlined in O.C.G.A. § 10-1-391(a).

118. BR Carroll violated the FBPA through the use of unlawful acts and practices within the meaning of O.C.G.A. § 10-1-393.

119. BR Carroll used illegal and improper means to deceive Plaintiff through BR Carroll's use of knowingly false representations to Plaintiff as to the

repair status of the property, condition of the property, and quality of repairs completed on the property.

120. Based on BR Carroll's knowingly false representations, Plaintiff paid to BR Carroll rent.

121. BR Carroll used illegal and improper means to exploit the resources of Plaintiff through the use of deception, false representation, false pretenses, and other similar means for BR Carroll's profit and advantage.

122. BR Carroll's conduct was in disregard of Plaintiff's rights.

123. BR Carroll's conduct constitutes a violation of the FBPA.

124. BR Carroll's conduct caused Plaintiff to suffer mental or emotional anguish.

125. BR Carroll's conduct caused Plaintiff to suffer loss of assets essential to his health and welfare.

126. BR Carroll acted intentionally in violating the FBPA.

127. Plaintiff suffered damages due to BR Carroll's intentional acts in violation of the FBPA in an amount of at least $13,203.28.

128. Plaintiff sent an ante litem letter to Defendant BR Carroll on December 3, 2018 in a good faith effort to resolve his claims.

129. Defendants BR Carroll failed to respond to Plaintiff's good faith effort to settle his claims with an offer in any amount.

130. Pursuant to O.C.G.A. § 10-1-399, Plaintiff is entitled to the recovery of treble damages in an amount of at least $39,609.84.

131. Pursuant to O.C.G.A. § 10-1-399, Plaintiff was entitled to the recovery of reasonable attorney's fees and costs of litigation.

### *PRAYER FOR RELIEF*

THEREFORE, Plaintiff prays that this Court grant the following relief as against Defendants:

   a)  actual damages;
   b)  statutory damages;
   c)  punitive damages;
   d)  attorney's fees and costs
   e)  A 15% additional recovery against Defendant BR Carroll on top of all recovered damages in this action plus all expenses of this litigation, including his attorney's fees, and court costs; and
   f)  such other relief as this court deems appropriate.

### JURY TRIAL DEMANDED

Dated: April 9, 2019.

[signature on following page]

Respectfully submitted,

**SMITH, WELCH, WEBB & WHITE, LLC**
By: **s/Orion G. Webb**
Orion G. Webb, Esq.
Georgia Bar No. 479611
Miranda N. Hanley
Georgia Bar No. 451274
280 Country Club Drive
Suite 300
Stockbridge, GA 30281
T. (770) 389-4864
F. (770) 389-5193
owebb@smithwelchlaw.com
**Attorneys for Plaintiff**

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 5.1

Plaintiff's counsel hereby certifies that this pleading has been prepared with one of the font and point selections approved by the Court in L.R. 5.1.

**SMITH, WELCH, WEBB & WHITE, LLC**

**/s/ Orion G. Webb**
ORION G. WEBB
Georgia State Bar No. 479611
Attorney for Plaintiff