## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **JARED BATTERMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.** |
| | ) | |
| **v.** | ) | **1:19-cv-1598-CC-JFK** |
| | ) | |
| **BR CARROLL GLENRIDGE,** | ) | |
| **LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## REPLY IN IN SUPPORT OF PLAINTIFF'S MOTION FOR COSTS OF SERVICE PURSUANT TO RULE 4(d)(2) AND RESPONSE TO MOTION TO ENFORCE SETTLEMENT AGREEMENT

Comes now Plaintiff, Jared Batterman, through counsel, and files this Reply in support of his motion for costs of service pursuant to Fed. R. Civ. P. 4(d)(2) on Defendant BR Carroll Glenridge, LLC (hereinafter "BR Carroll") for its failure to waive formal service, together with attorney's fees incurred by Plaintiff in bringing the instant motion, and Response to BR Carroll's Motion to Enforce Settlement Agreement showing this Court the following:

### I. Statement of Facts

Plaintiff filed the instant action on April 9, 2019. Plaintiff mailed the Summons, Complaint and Waiver of Service to BR Carroll on April 11, 2019. Defendant BR Carroll failed to waive service. It is uncontested that on May 8, 2019,

the parties agreed to settle Mr. Batterman's claims against BR Carroll for $5,000. However, the parties were not able to agree to all terms of settlement. BR Carroll's insurance company sent Plaintiff's counsel an email which attached a letter enumerating the agreement to settle Mr. Batterman's claims, but attached a release containing terms that had not been agreed to by Mr. Batterman, including an acknowledgment that Defendant has paid Mr. Batterman $5,000, which was not true, a release to successors in interest, and a representation and warranty that no lawsuit had been filed, which was also contrary to fact. (Doc. 35-3). Because these terms are both inaccurate and outside of the scope of the parties' agreement, Plaintiff's counsel struck through the inappropriate language and Mr. Batterman executed the release as edited. (Doc. 35-5).

In the meantime, on June 5, 2019, Plaintiff filed a Notice of Settlement with the Court stating that "Plaintiff and Defendants BR Carroll… and IQ Data … have agreed to terms for settlement for which they will need approximately 60 days to conclude, and thereafter Plaintiff will file a stipulation of dismissal with prejudice." (Doc. 9). Good to his word, Mr. Batterman attempted to conclude his settlement with both listed parties and a dismissal of IQ Data was finalized on August 2, 2019. (Doc. 26). However, BR Carroll's insurer refused to negotiate the terms of the settlement, insisting that Mr. Batterman not only accept the additional term by releasing any successors in interest, but also state that he had received payment, which he had not,

and perjure himself by representing and warranting that this action had not been filed. (Doc. 35-6). Plaintiff immediately responded that the release as written is inaccurate for the reasons stated above, and stated "If we do not have an accord, then I will serve your insured and we can proceed with the lawsuit." See Plaintiff's Response Email dated June 20, 2019 attached hereto as Exhibit 1. Because the settlement language was rejected and Plaintiff received no further response, Plaintiff served Defendant through a process server on June 30, 2019. (Doc. 33-1). One-hundred fifty dollars ($150.00) was expended for service. (Doc. 33-2).

On July 8, 2019, insurance adjuster Trujillo replied with an email entitled "UNABLE TO ACCEPT YOUR ALTERED RELEASE" with an exhibit stating in red at the top of the altered release as follows: "Mr. Orion – We are unable to accept your clients altered release. Please have your client sign and return the original. Thank you." See Response Email of Adjuster Trujillo dated June 20, 2019 attached hereto as Exhibit 2.

Plaintiff's time in bringing his motion now amounts to $2,100.25. See Second Affidavit of Attorney's Fees for 6.4 hours of attorney time and 4.35 hours of paralegal time attached as Exhibit 3.

## II.  Law and Argument

A. <u>Settlement Negotiations, which BR Carroll Ultimately Scuttled are not good cause not to waive service.</u>

In order to show "good cause" under Rule 4(d)(2) for failure to return the waiver of service, a defendant typically must show that a Plaintiff did not strictly comply with Rule 4(d)(1). As a term, "good cause" does not include attempting to settle the case:

> Defendant asserts it had "good cause" for failing to waive formal service because it was trying to negotiate a settlement, and Plaintiff was not negotiating in   good   faith.   Even   assuming, *arguendo*,   that Defendant's representation of the negotiations is true, a party's failure to negotiate a settlement in good faith does not provide "good cause" for failing to waive formal service. *See Butler v. Crosby*, No. 3:04-cv-917-j-32MMH, 2005 WL 3970740 at *2 (M.D. Fla. Sept. 20, 2004) (discussing the limited circumstances that support a finding of good cause, including ones such as the defendant not receiving the request for waiver or not being sufficiently literate in English to understand it or a plaintiff's failure to properly comply with Rule 4); *see also Neal v. Cochran*, 589 F. Supp. 2d 1363, 1364 (N.D. Ga. 2008) (citing Fed. R. Civ. P. 4 advisory committee's notes) (noting that a finding of "good cause" should be rare and that a court's lack of jurisdiction does not provide "good cause" for failing to waive service).

*Baxam Law Grp., LLC v. Howard & Howard Attorneys, PLLC*, No. 110CV04266ATC866075, 2012 WL 13006244, at *1 (N.D. Ga. Jan. 30, 2012). BR Carroll does not argue that Plaintiff did not fully comply with the requirements of Rule 4(d)(1) by sending the required waiver requests and forms to the registered agent of BR Carroll or that it waived service. Plaintiff's Motion for Costs should be granted.

B. <u>Because there was no meeting of the minds, there is no enforceable settlement agreement.</u>

When construing and enforcing settlement agreements, this Court applies state contract law. *Atlanta Fiberglass USA, LLC v. KPI, Co.*, No. 1:11-CV-4367-RWS, 2013 WL 4786912, at *5 (N.D. Ga. Sept. 6, 2013), citing *Cohen v. DeKalb County School Dist.*, No. 1:09cv1153 WSD., 2009 WL 4261161, at *4 (N.D. Ga. Nov.25, 2009); see also *Vinnett v. Gen. Elec. Co.*, 271 Fed. Appx. 908, 912 (11th Cir. 2008). In Georgia "[a]cceptance of an offer must be unconditional, unequivocal, and without variance of any sort; otherwise, there can be no meeting of the minds and mutual assent necessary to contract formation." *Durham v. McLaughlin*, 286 Ga. App. 166, 167 (2007) quoting *Butler v. Household Mtg. Svcs.*, 266 Ga. App. 104, 106 664 (2004). The necessary elements of a contract include "(1) parties that are able to contract; (2) consideration; (3) mutual assent of terms; and (4) subject matter of the contract." *Cohen*, 2009 WL 4261161, at *4 (citing *Blum v. Morgan Guar. Trust Co. of New York*, 709 F.2d 1463, 1467 (11th Cir.1983) (citing O.C.G.A. § 1331).

> "[I]t is well settled that an agreement between two parties will occur only when the minds of the parties meet at the same time, upon the same subject matter, and in the same sense." *Southern Medical Corp. v. Liberty Mut. Ins. Co.*, 216 Ga.App. 289, 291, 454 S.E.2d 180 (Ga.Ct.App.1995). To constitute a valid contract, there must be a meeting of the minds on all essential terms. *Cohen*, 2009 WL 4261161, at *5. "[I]f there was in fact any essential part of the contract upon which the minds of the parties had not met, or upon which there was not an agreement ... it must follow that a valid and binding contract was

not made." *BellSouth Advertising, etc., Corp. v. McCollum,* 209 Ga.App. 441, 445, 433 S.E.2d 437 (1993).

*Atlanta Fiberglass*, No. 1:11-CV-4367-RWS, 2013 WL 4786912, at *5.

Where, as here, "the parties did not clearly agree on the specific terms of a settlement agreement…, and since the [Defendant] later rejected and varied the terms of the plaintiffs' proposed settlement…, there was no meeting of the minds necessary for the formation of the alleged settlement agreement." *Durham*, 286 Ga. App. at 167. It is uncontested that on May 8, 2019, the parties agreed to settle Mr. Batterman's claims against BR Carroll for $5,000. However, the parties were not able to agree to all terms of settlement. BR Carroll's insurance company sent Plaintiff's counsel a release containing terms that had not been agreed to by Mr. Batterman, including an acknowledgment that Defendant has paid Mr. Batterman $5,000, which was not true, a release to successors in interest, and a representation and warranty that no lawsuit had been filed, which was also contrary to fact. (Doc. 35-3). Because these terms are both inaccurate and outside of the scope of the parties' agreement, Plaintiff's counsel struck through the inappropriate language and Mr. Batterman executed the release as edited. (Doc. 35-5). However, BR Carroll's insurer refused to negotiate the terms of the settlement. (Doc. 35-6). It could not be made any more clear that the parties did not have a meeting of the minds on all essential terms of the contract than the July 8, 2019 correspondence from insurance adjuster Trujillo entitled "UNABLE TO ACCEPT YOUR ALTERED

Page **6** of **9**

RELEASE" with an exhibit stating in red at the top of the altered release, "Mr. Orion – We are unable to accept your clients altered release. Please have your client sign and return the original. Thank you." See Response Email of Adjuster Trujillo dated June 20, 2019 attached hereto as Exhibit 2. Now that BR Carroll has forced the Plaintiff to serve it and assume additional costs of litigation it wants to accept the language of the rejected release. However, awarding BR Carroll's stubborn and quarrelsome behavior would not be appropriate here. A valid and binding contract was not made because there was no unconditional, unequivocal, and without variance of any sort acceptance of an offer, so there is no settlement agreement for this Court to enforce.

C. <u>Plaintiff's Requested Attorney's Fees are Reasonable.</u>

Plaintiff's time in bringing his motion is now $2,100.25 for 6.4 hours of attorney time and 4.35 hours of paralegal time required to prepare his Motion and Memorandum in Support, and the instant pleading as illustrated in Plaintiff's Second Affidavit of Attorney's Fees attached as Exhibit 3.

### III. Conclusion

Plaintiff should be awarded the costs of service, together with the costs of preparing his Motion, Memorandum, and Reply Brief because BR Carroll lacked good cause for its refusal to execute a waiver of service. Further, the parties never

had a meeting of the minds on all essential terms of their settlement, so BR

Carroll's motion to enforce should be denied.

Respectfully submitted,

**SMITH, WELCH, WEBB & WHITE, LLC**
By:  **s/Orion G. Webb**

Orion G. Webb, Esq.
Georgia Bar No. 479611
280 Country Club Drive
Suite 300
Stockbridge, GA  30281
T. (770) 389-4864
F. (770) 389-5193
owebb@smithwelchlaw.com
Attorney for Plaintiff

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this day, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Dated: September 4th, 2019.

Respectfully submitted,

*/s/ Orion G. Webb*
Orion G. Webb

## **CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 5.1**

Plaintiff's counsel hereby certifies that this pleading has been prepared with one of the font and point selections approved by the Court in L.R. 5.1.

*/s/ Orion G. Webb*
Orion G. Webb
Georgia State Bar No. 479611
Attorney for Plaintiff