IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JARED BATTERMAN,

             Plaintiff,

     v.

BR CARROLL GLENRIDGE, LLC,
EQUIFAX INFORMATION
SERVICES LLC, and TRANS
UNION LLC,

           Defendants.

CIVIL ACTION FILE NO.

1:19-CV-01598-CC-JFK

## **ORDER AND NON-FINAL REPORT AND RECOMMENDATION**

Pending before the court are a motion [Doc. 33] for costs of service filed by Plaintiff Jared Batterman and a motion [Doc. 36] to enforce settlement agreement filed by Defendant BR Carroll Glendridge, LLC ("BR Carroll"). Plaintiff Batterman filed his complaint in this action on April 9, 2019. [Doc. 1]. In his complaint as to Defendant BR Carroll, Plaintiff asserts claims for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681s-2(b), breach of contract, negligence, failure to return security deposit, and violations of the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390, *et seq.* [Doc. 1 ¶¶ 57-75, 84-131].

## I.     Factual Background

On April 11, 2019, two days after Plaintiff filed his complaint in this action, Plaintiff's counsel sent Defendant BR Carroll a notice of lawsuit, summons, complaint, and request for waiver of service of summons. [Doc. 35-2]. BR Carroll received the mailing on April 15, 2019. [Id.]. The letter informed BR Carroll that it had thirty days from the date on which the notice was sent to return the signed waiver. [Id.]. Defendant BR Carroll did not return the waiver on or before the thirty-day deadline of May 11, 2019.

On May 8, 2019, a representative of BR Carroll's insurer, claims representative Hilda Trujillo, sent Plaintiff's counsel an email with an attached letter confirming an agreement to settle Plaintiff's claims "for the agreed upon amount of $5,000.00." [Doc. 35-3; Doc. 38 at 2]. For many months prior to this time, Ms. Trujillo and Plaintiff's counsel had been negotiating Plaintiff's claims. [Doc. 35-1]. The email from Ms. Trujillo on May 8, 2019, attached a release containing terms that had not been agreed upon by Plaintiff. [Doc. 35-3; Doc. 38 at 2]. On June 5, 2019, almost a month after Ms. Trujillo sent the letter and release, Plaintiff filed with the court a "Notice of Settlement" stating that Plaintiff and Defendant BR Carroll "have agreed to terms for settlement for which they anticipate that they will need approximately 60

days to conclude, and thereafter Plaintiff will file a stipulation of dismissal with prejudice as to Defendant[] BR Carroll." [Doc. 9]. The same Notice of Settlement informed the court that Plaintiff had also agreed to terms of settlement with IQ Data International, Inc. ("IQ Data"), a previously named Defendant in this case. [Id.].

On June 18, 2019, Ms. Trujillo sent an email to Plaintiff's counsel checking on the status of Plaintiff's signed release. [Doc. 35-4]. On June 20, 2019, Plaintiff's counsel sent a release form signed by his clients but with alterations. [Doc. 35-5; Doc. 38-2]. On the same day, after receiving the altered release, Kim Graves, another claims manager, sent an email and attachment to Plaintiff's counsel. [Doc. 35-6]. The email stated, *inter alia*, "Please do not alter the release form." [Id.]. The attachment contained the original unaltered release and a letter from Ms. Trujillo to Plaintiff's counsel. [Id.]. In the letter, Ms. Trujillo wrote:

> Attached is the Settlement Agreement and Release of All Claims (Release) for the claim brought against MPC Partnership Holdings LLC for the agreed upon amount of $5,000. Please read the terms of the Release, then have your clients sign the Release without any alterations, and return an executed copy of the Release to our office. Upon receipt of the executed Release, payment in the amount of $5,000.00 will be mailed to you at the address as notated on this letter.

[Id.].

3

On the afternoon of June 20, 2019, immediately after Ms. Graves sent the email and attachment, Plaintiff's counsel responded by writing the following to Ms. Graves:

> No. That document is not accurate. A lawsuit has been filed and my client is not in possession of $5,000. Further, my clients never agreed to give a waiver to successors in interest, and they will not do so. My clients have signed a release which has been amended to be accurate. If we do not have an accord, then I will serve your insured and we can proceed with the lawsuit.

[Doc. 38-1]. Ten days later, on June 30, 2019, Plaintiff served BR Carroll. [Doc. 15]. Ms. Trujillo sent an email to Plaintiff's counsel on July 8, 2019, and wrote:

> We are unable to accept your altered release of all claims. If your client would like to resolve this matter with us, please have him signed [sic] the original release sent to you unaltered. If your client is not in agreement then please advise what you plan to do.

[Doc. 38-2]. On August 2, 2019, Plaintiff filed a Notice of Voluntary Dismissal as to Defendant IQ Data. [Doc. 26]. However, no notice of voluntary dismissal was ever filed by Plaintiff with regard to Defendant BR Carroll.

## II.    Plaintiff's Motion for Costs of Service

Plaintiff Batterman moves the court for an award of his costs for service of the summons and complaint on Defendant BR Carroll for its failure to waive formal service. [Doc. 33]. Plaintiff seeks costs and attorney's fees incurred in preparing the

4

motion.  [Id.].  Plaintiff's motion is brought pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure.  [Id.].

Rule 4(d)(1) provides, in pertinent part: "An individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h) has a duty to avoid unnecessary expenses of serving the summons.  The plaintiff may notify such a defendant that an action has been commenced and request that the defendant waive service of a summons."  Fed. R. Civ. P. 4(d)(1) (as amended 2007).  Rule 4(d)(2) provides: "If a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States, the court must impose on the defendant: (A) the expenses later incurred in making service; and (B) the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses."  Fed. R. Civ. P. 4(d)(2) (as amended 2007).  Under Rule 4(d)(1)(A),[1] where a waiver is sought from a corporation, partnership, or association, "it must be addressed to a person authorized to receive service of process, i.e., an officer or managing general agent.  Fulfilling these requirements is a condition

---

[1]Rule 4(d)(1)(A) provides: "The notice and request must: (A) be in writing and be addressed: (i) to the individual defendant; or (ii) for a defendant subject to service under Rule 4(h), to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ."  Fed. R. Civ. P. 4(d)(1)(A) (as amended 2007).

precedent to a demand for costs for refusal to waive service." <u>Spivey v. Board of Church Extension and Home Mission of the Church of God</u>, 160 F.R.D. 660, 663 (M.D. Fla. 1995).

In the present case, Plaintiff's counsel sent Defendant BR Carroll a notice of lawsuit, summons, complaint, and request for waiver of service of summons on April 11, 2019.  [Doc. 35-2].  The mailing was sent to BR Carroll two days after Plaintiff filed his complaint in this action.  [Doc. 1].  BR Carroll received the mailing on April 15, 2019.  [Doc. 35-2].  The letter informed BR Carroll that it had thirty days from the date on which the notice was sent to return the signed waiver.  [<u>Id.</u>].  Plaintiff complied with the requirements of Rule 4(d)(1), and Defendant makes no argument to the contrary.  [Doc. 35 at 3-4].

Although Defendant BR Carroll does not dispute that Plaintiff satisfied Rule 4(d)(1), Defendant did not sign and return the waiver on or before the thirty-day deadline of May 11, 2019.  Therefore, pursuant to Rule 4(d)(2), "the court must impose" on BR Carroll the expenses incurred by Plaintiff in making service and the reasonable expenses and fees in bringing the present motion, unless Defendant is able to show "good cause."  Fed. R. Civ. P. 4(d)(2) (as amended 2007).  The Advisory Committee Notes to the 1993 Amendments to Rule 4 state, "A defendant failing to

AO 72A
(Rev.8/82)

comply with a request for waiver shall be given an opportunity to show good cause for the failure, but sufficient cause should be rare." Fed. R. Civ. P. 4(d), 1993 Advisory Committee Notes. The Advisory Committee Notes give two examples in which good cause would exist: (1) the defendant did not receive the request for waiver; and (2) the defendant was insufficiently literate in English to understand it. Id. Neither of these exceptions applies in the present case.

In its response to Plaintiff's motion for costs, Defendant BR Carroll nevertheless argues that it had good cause for not waiving service because a settlement of this matter was reached before the time to waive service expired. [Doc. 35 at 4]. For the reasons discussed *infra*, the court finds that a binding settlement was not actually reached by the parties because there was no meeting of the minds. However, the court agrees with Defendant BR Carroll that it had good cause for failing to waive formal service because BR Carroll representatives reasonably believed that Plaintiff and BR Carroll had agreed to settle Plaintiff's claims.

In support of his motion for costs, Plaintiff cites to Baxam Law Group, LLC v. Howard & Howard Attorneys, PLLC, 2012 WL 13006244 (N.D. Ga. January 30, 2012). The court in Baxam Law Group held: "Defendant asserts it had 'good cause' for failing to waive formal service because it was trying to negotiate a settlement, and

7

Plaintiff was not negotiating in good faith. Even assuming, *arguendo*, that Defendant's representation of the negotiations is true, a party's failure to negotiate a settlement in good faith does not provide 'good cause' for failing to waive formal service." Id., at *1. The court finds that the facts in the present case are distinguishable from those in Baxam Law Group. Here, Defendant BR Carroll was not merely "trying to negotiate a settlement" with Plaintiff. Id. Instead, the evidence reveals that both parties believed that they had reached some type of settlement, even though the essential terms of the settlement were never agreed upon.

As previously noted, on May 8, 2019, Ms. Trujillo, a representative of BR Carroll's insurer, sent Plaintiff's counsel an email with an attached letter confirming the parties' agreement to settle Plaintiff's claims "for the agreed upon amount of $5,000.00." [Doc. 35-3; Doc. 38 at 2]. Plaintiff acknowledges that at this point, he and BR Carroll had agreed in principle to settle Plaintiff's claims. Plaintiff writes, "It is uncontested that on May 8, 2019, the parties agreed to settle Mr. Batterman's claims against BR Carroll for $5,000." [Doc. 38 at 1-2]. The thirty-day waiver deadline was three days later, and, as previously noted, BR Carroll did not return the waiver on or before the deadline of May 11, 2019. On June 5, 2019, four weeks after Ms. Trujillo sent the letter and release, Plaintiff filed with the court a "Notice of Settlement" stating

8

that Plaintiff and Defendant BR Carroll "have agreed to terms for settlement for which they anticipate that they will need approximately 60 days to conclude, and thereafter Plaintiff will file a stipulation of dismissal with prejudice as to Defendant[] BR Carroll." [Doc. 9].

Rule 4(d)(2), as previously explained, requires the court to impose on Defendant the expenses incurred by Plaintiff in effectuating service and the reasonable expenses and fees in bringing the present motion unless Defendant is able to show "good cause." Fed. R. Civ. P. 4(d)(2) (as amended 2007). Given the Notice of Settlement filed by Plaintiff stating that the parties had agreed to a settlement and the fact that both parties acknowledge that, prior to the waiver deadline, they had agreed to settle Plaintiff's claims against BR Carroll for $5,000, the undersigned concludes that BR Carroll had good cause for failing to waive service. Because Plaintiff is not entitled to costs and fees under Rule 4(d)(2), Plaintiff's motion [Doc. 33] for costs of service is **DENIED**.

## III.    Defendant's Motion to Enforce Settlement Agreement

Defendant BR Carroll has moved the court to enforce an agreement to settle Plaintiff's claims. [Doc. 36]. Defendant argues that Plaintiff and BR Carroll reached a settlement agreement in May 2019 and that the court should enforce the terms of the

9

settlement. [Id. at 5-6]. Plaintiff argues that no enforceable settlement agreement exists because there was no meeting of the minds. [Doc. 38 at 5-7].

"The construction and enforcement of settlement agreements are governed by the contract law of the forum state." Clough Marketing Services, Inc. v. Main Line Corp., 313 Fed. Appx. 208, 211 (11th Cir. 2008). In this case, Georgia law governs whether there was a settlement agreement and the construction of any alleged settlement agreement. Ford v. Citizens & S. Nat'l Bank, 928 F.2d 1118, 1120 (11th Cir. 1991); see also Wong v. Bailey, 752 F.2d 619, 621 (11th Cir. 1985). "In deciding a motion to enforce a settlement agreement (as with a motion for summary judgment) a court may consider 'the documents, affidavits, depositions and other evidence in the record' to determine whether a genuine issue of material fact exists." Albert v. American Family Ins. Co., 739 Fed. Appx. 607, 610 n.2 (11th Cir. 2018) (quoting Walls v. Walls, 260 Ga. App. 673, 580 S.E.2d 564, 566 (2003)). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986). "Because the same standards apply to a motion to enforce settlement agreement as a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party[.]" Fitzhugh v. AB McDonough's, Inc., 2017 WL

10

937965, at *2 (S.D. Ga. March 9, 2017) (citing <u>DeRossett Enterprises, Inc. v. General</u> <u>Elec. Capital Corp.</u>, 275 Ga. App. 728, 728, 621 S.E.2d 755, 756 (2005)).

"Under Georgia law, an agreement alleged to be in settlement and compromise of a pending lawsuit must meet the same requisites of formation and enforceability as any other contract." <u>Blum v. Morgan Guar. Trust Co. of New York</u>, 709 F.2d 1463, 1467 (11th Cir. 1983) (citation omitted). "[I]t is well settled that an agreement between two parties will occur only when the minds of the parties meet at the same time, upon the same subject matter, and in the same sense." <u>Johnson v. Gwinnett County</u>, 215 Ga. App. 79, 80, 449 S.E.2d 856, 857 (1994) (citation and internal quotation marks omitted). "The formation of a contract also depends on both an offer and an acceptance of the contract's terms." <u>Cohen v. DeKalb County School Dist.</u>, 2009 WL 4261161, at *4 (N.D. Ga. November 25, 2009). Georgia courts have held:

> [A]n answer to an offer will not amount to an acceptance, so as to result in a contract, unless it is unconditional and identical with the terms of the offer. The offer must be accepted unequivocally and without variance of any sort. And if a purported acceptance of the plaintiff's settlement offer imposes any new conditions, it constitutes a counteroffer rather than an acceptance.

<u>Newton v. Ragland</u>, 325 Ga. App. 371, 373, 750 S.E.2d 768, 770 (2013) (citation and internal quotation marks omitted).

11

In the present case, Defendant argues that Plaintiff and BR Carroll reached a settlement agreement in May 2019. As noted *supra*, Ms. Trujillo, a representative of BR Carroll's insurer, sent Plaintiff's counsel an email on May 8, 2019, with an attached letter confirming the agreement to settle Plaintiff's claims "for the agreed upon amount of $5,000.00." [Doc. 35-3; Doc. 38 at 2]. Approximately a month later, Plaintiff filed with the court a "Notice of Settlement" stating that Plaintiff and Defendant BR Carroll "have agreed to terms for settlement for which they anticipate that they will need approximately 60 days to conclude, and thereafter Plaintiff will file a stipulation of dismissal with prejudice as to Defendant[] BR Carroll." [Doc. 9].

Two weeks later, on June 20, 2019, after Ms. Trujillo emailed Plaintiff's counsel to check on the status of the signed release, Plaintiff's counsel responded by sending a release form signed by his clients but with alterations. [Doc. 35-5; Doc. 38-2]. After Ms. Graves, another claims manager, received the altered release, she sent an attachment and an email to Plaintiff's counsel which stated, *inter alia*, "Please do not alter the release form." [Doc. 35-6]. The attachment contained the original unaltered release and a letter from Ms. Trujillo to Plaintiff's counsel which read:

> Attached is the Settlement Agreement and Release of All Claims (Release) for the claim brought against MPC Partnership Holdings LLC for the agreed upon amount of $5,000. Please read the terms of the

12

> Release, then have your clients sign the Release without any alterations, and return an executed copy of the Release to our office. Upon receipt of the executed Release, payment in the amount of $5,000.00 will be mailed to you at the address as notated on this letter.

[Id.].

On the afternoon of June 20, 2019, immediately after Ms. Graves sent the email and attachment, Plaintiff's counsel responded by writing the following to Ms. Graves:

> No. That document is not accurate. A lawsuit has been filed and my client is not in possession of $5,000. Further, my clients never agreed to give a waiver to successors in interest, and they will not do so. My clients have signed a release which has been amended to be accurate. If we do not have an accord, then I will serve your insured and we can proceed with the lawsuit.

[Doc. 38-1]. Ten days later, on June 30, 2019, Plaintiff served BR Carroll. [Doc. 15].

Ms. Trujillo sent an email to Plaintiff's counsel on July 8, 2019, and wrote:

> We are unable to accept your altered release of all claims. If your client would like to resolve this matter with us, please have him signed [sic] the original release sent to you unaltered. If your client is not in agreement then please advise what you plan to do.

[Doc. 38-2].

Defendant BR Carroll argues that the parties agreed to the terms of the settlement. [Doc. 36 at 5-6]. Defendant writes, "While there was some dispute regarding the language of the release, this does not change the fact that the material

13

terms of the agreement, the settlement of Plaintiff's claims against BR Carroll in exchange for $5,000, had been accepted by both parties." [Id.].  In support of its argument, Defendant cites to Newton, in which the Georgia Court of Appeals wrote, "[I]t is well settled that the mere inclusion of a release form unacceptable to the plaintiff does not alter the fact that a meeting of the minds had occurred with regard to the terms of the settlement."  Id., 325 Ga. App. at 374, 750 S.E.2d at 770-71 (citation and internal quotation marks omitted).  The court in Newton held that a response to an offer which includes a proposed release will be found to be an acceptance of an offer, rather than a counter-offer, if the acceptance includes "'precatory words rather than mandatory direction[.]'"  Id., 325 Ga. App. at 374, 750 S.E.2d at 771 (citation omitted).  The Newton court further explained, "Precatory words are those words that indicate entreaty, recommendation, or expectation rather than any mandatory direction."  Id. (citation and internal quotation marks omitted).

In the present case, the evidence when viewed in the light most favorable to Plaintiff reveals that there is a genuine issue of material fact with regard to whether there was a meeting of the minds as to the terms of the settlement.  Defendant has failed to cite to evidence showing that there was an offer and an acceptance that was "unconditional and identical with the terms of the offer."  Newton, 325 Ga. App. at

14

373, 750 S.E.2d at 770 (citation and internal quotation marks omitted). The record before the court also does not reveal that any offer of settlement was "accepted unequivocally and without variance of any sort." Id. (citation and internal quotation marks omitted).

Significant to the court's finding on this issue is the fact that the words used by the claims representatives in corresponding with Plaintiff's counsel were not precatory words, that is, words indicating mere recommendation, but mandatory direction. See id., 325 Ga. App. at 374, 750 S.E.2d at 771. As noted *supra*, after Ms. Trujillo sent Plaintiff's counsel a release for his clients to sign, Plaintiff's counsel responded by sending a release form signed by his clients but with alterations. [Doc. 35-5; Doc. 38-2]. The alterations struck through language in the release which: indicated that $5,000 had been received by Plaintiff; gave a waiver to successors-in-interest; and indicated that the clients had not filed a lawsuit arising out of, or related to, the claim. [Doc. 38-2]. Ms. Graves, another claims manager, sent an attachment and an email to Plaintiff's counsel which stated, "Please do not alter the release form." [Doc. 35-6]. The attachment contained the original unaltered release and a letter from Ms. Trujillo instructing Plaintiff's counsel to "have your clients sign the Release without any alterations, and return an executed copy of the Release to our office." [Id.]. Plaintiff's

15

counsel responded by informing Ms. Graves that the release was not accurate because a lawsuit had been filed, Plaintiff was "not in possession of $5,000," and his "clients never agreed to give a waiver to successors in interest, and they will not do so." [Doc. 38-1].

Ms. Trujillo sent an email to Plaintiff's counsel on July 8, 2019, and wrote, *inter alia*: "We are unable to accept your altered release of all claims." [Doc. 38-2]. Ms. Trujillo did not merely make a recommendation to Plaintiff's counsel regarding the release but directed him to have Plaintiff sign the release unaltered. [Id.]. Ms. Trujillo also indicated that, until Plaintiff signed the release without making any alterations, the matter was not resolved and there was no agreement. [Id.]. Given the mandatory language used by the claims representatives, including Ms. Trujillo's explicit statement that the altered release submitted by Plaintiff would not be accepted, the court finds that Defendant BR Carroll has failed to show that there was a meeting of the minds necessary for the formation of a binding settlement agreement.[2] See Yim v. Carr, 349

---

[2]Although the release which was altered and signed by Plaintiff was not accepted by the claims representatives, BR Carroll has informed the court in its reply brief that now it "will agree to accept Plaintiff's previously signed and edited release as the final release of this matter." [Doc. 40 at 3]. The undersigned strongly encourages Plaintiff and BR Carroll to settle this issue quickly in order to conserve judicial resources. See Murchison v. Grand Cypress Hotel Corp., 13 F.3d 1483, 1487 (11th Cir. 1994) ("We favor and encourage settlements in order to conserve judicial

16

Ga. App. 892, 908-09, 827 S.E.2d 685, 698 (2019) (reversing the trial court's grant of motion to enforce settlement agreement because "the Settlement Offer conditioned Liberty Mutual's acceptance on a particular limited liability release" and "there was no unequivocal acceptance of Carr's Settlement Offer by Liberty Mutual, and thus no meeting of the minds and no binding settlement"); Duenas v. Cook, 347 Ga. App. 436, 442, 818 S.E.2d 629, 634 (2018) ("Considering the evidence in the light most favorable to the nonmoving party, as we must, we find that Nationwide did not unequivocally accept the material term in the Settlement Offer that Duenas would only release his bodily injury claims, and thus there was no meeting of the minds and no settlement."), reconsideration denied (October 1, 2018), cert. denied (May 20, 2019); Kitchens v. Ezell, 315 Ga. App. 444, 448-51, 726 S.E.2d 461, 466-67 (2012) (reversing the trial court's grant of motion to enforce settlement agreement and finding no meeting of the minds and no binding settlement because insurer "purported to accept the claimants' offer to settle the bodily injury damage claims but submitted a non-conforming proposed release of any and all claims, including property damage"). It is, therefore, **RECOMMENDED** that Defendant's motion [Doc. 36] to enforce settlement agreement be **DENIED**.

---

resources.").

## IV.    Conclusion

Based on the foregoing reasons and cited authority, the undersigned **RECOMMENDS** that Defendant BR Carroll's motion [Doc. 36] to enforce settlement agreement be **DENIED**.

It is **ORDERED** that Plaintiff Batterman's Rule 4(d)(2) motion [Doc. 33] for costs of service is **DENIED**.

**SO ORDERED AND RECOMMENDED**, this 17th day of October, 2019.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

18